IN THE UNITED STATES COURT OF FEDERAL CLAIMS
No. 07-692 T

(Senior Judge Loren A. Smith)

---

WILLIAM C. LEONARD,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

**REPLY BRIEF FOR THE UNITED STATES**
**IN SUPPORT OF ITS MOTION TO DISMISS**

---

NATHAN J. HOCHMAN
*Assistant Attorney General*

DAVID GUSTAFSON
*Chief, Court of Federal Claims Section*

RICHARD H. BOWLES
*Attorney of Record*
U.S. Department of Justice, Tax Division
Court of Federal Claims Section
P.O. Box 26, Ben Franklin Station
Washington, D.C. 20044
(v) 202-307-6500
(f) 202-514-9440

## TABLE OF CONTENTS

Page

I. This Court has no jurisdiction in the absence of a timely administrative claim. ......... 2

A. Facially, the complaint fails to support jurisdiction because plaintiff has not identified an administrative refund claim and has not included a copy of an administrative refund claim. .......................................................................... 2

1. The text of the complaint reads, "Plaintiff could not file a claim for refund."...... 2

2. The complaint has not identified any document – including a properly filed tax return for 1990 – as an administrative refund claim............................................ 3

3. The averments of the complaint do not inform whether the referenced tax return sufficed as a claim for refund. ................................................................... 4

B. Factually, the complaint fails to support jurisdiction because plaintiff has not submitted competent proof that an administrative refund claim was timely filed.... 6

1. Plaintiff has offered no competent proof regarding the transmittal of his 1990 tax return.................................................................................................... 7

2. What plaintiff has put forward does not address whether his 1990 tax return was mailed in July 1992. ............................................................................ 8

3. In any event, filing, not mailing, is the jurisdictional prerequisite....................... 9

II. This Court has no jurisdiction over a suit filed after the expiration of the statute of limitations.................................................................................................... 12

Conclusion .................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Buttke v. United States*, 13 Cl. Ct. 191 (1987)....................................................... 10, 11

*Cedars-Sinai Medical Center v. Watkins*, 11 F.3d 1573 (Fed. Cir. 1993) .................. 6, 7

*Davis v. United States*, 230 F.3d 1383, 2000 WL 194111 (Fed. Cir. 2000) (table)...... 11

*H.S.&H. Ltd. of Columbia ILL v. United States*, 18 Cl. Ct. 241 (1989).................. 10, 11

*Healer v. Commissioner*, 115 T.C. 316 (2000) ........................................................... 6

*Hull v. United States*, 146 F.3d 235 (4th Cir. 1998) ........ 9

*Johnson v. United States*, 54 Fed. Cl. 187 (2002) ........ 6

*KVOS, Inc. v. Associated Press*, 299 U.S. 269 (1936) ........ 7

*Marcinkowsky v. United States*, 206 F.3d 1419 (Fed. Cir. 2000) ........ 13

*RHI Holdings, Inc., v. United States*, 142 F.3d 1459 (Fed. Cir. 1998) ........ 13

*Rios v. Nicholson*, 490 F.3d 928 (Fed. Cir. 2007) ........ 11

*Ygnatowiz v. United States*, No. 96-345T, 1997 WL 625502 (Fed. Cl. Aug. 5, 1997) (not reported) ........ 11

**Statutes**

26 U.S.C. § 6532 ........ 12, 13
26 U.S.C. § 7422 ........ 9
26 U.S.C. § 7502 ........ 9, 10, 11

28 U.S.C. § 1746 ........ 7

38 U.S.C. § 7266 ........ 11

**Rules**

Fed. R. Evid. 801 ........ 7

RCFC 7 ........ 7
RCFC 8 ........ 5
RCFC 9 ........ 2, 6
RCFC 10 ........ 5
RCFC 12 ........ 14
RCFC 43 ........ 7

**Regulations**

26 C.F.R. § 301.6402-3 ........ 4
26 C.F.R. § 301.7502-1 (1992) ........ 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
No. 07-692 T

(Senior Judge Loren A. Smith)

---

WILLIAM C. LEONARD,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

**REPLY BRIEF FOR THE UNITED STATES**
**IN SUPPORT OF ITS MOTION TO DISMISS**

---

Pending before the Court is defendant's motion, filed April 10, 2008, seeking dismissal for lack of subject matter jurisdiction ("Def.'s Mot."). That motion identified plaintiff's failure to allege a timely administrative refund claim and the untimeliness of the complaint as alternative reasons why plaintiff's suit falls outside Congress's grant of jurisdiction to this Court. Plaintiff responded on May 12, 2008, ("Pl.'s Resp."), and defendant hereby replies.

**I. This Court has no jurisdiction in the absence of a timely administrative claim.**

**A. Facially, the complaint fails to support jurisdiction because plaintiff has not identified an administrative refund claim and has not included a copy of an administrative refund claim.**

**1. The text of the complaint reads, "Plaintiff could not file a claim for refund."**

The complaint remains facially defective. It does not identify an administrative refund claim. It does not include a copy of an administrative refund claim.[1] On brief, plaintiff now asserts that "[a] fair reading of [the] Second Amended Complaint discloses that a timely administrative refund claim was made," Pl.'s Resp. at 1, but this assertion is contradicted by the text of the complaint that the brief aims to defend. *See* Second Am. Compl. at ¶ 10 ("Plaintiff could not file a claim for refund"); *id*. at ¶ 11 ("No claim for refund is attached because Plaintiff could not file a claim for refund"). Moreover, a complaint that does not plainly set forth when an administrative refund claim was filed or which specific document plaintiff relies on as an administrative refund claim does not satisfy this Court's pleading requirements. *See* Rule 9(h) of the Rules of the U.S. Court of Federal Claims ("RCFC") ("The complaint shall include . . . [i]n any action for refund of federal tax . . . the date and place the claim for refund was filed . . . . A copy of the claim for refund shall be annexed to the complaint").

[1] Plaintiff did supply a document to the Internal Revenue Service in 1999, which document his then-representative identified as Mr. Leonard's tax return. *See* Statement of Joseph Devaney (June 2, 2008) ("Devaney Stmt"), Ex. A (letter from Monique M. Ericson, CPA, to Joseph Devaney (Mar. 24, 1999)); *id*., Ex. B (unauthenticated 1990 Form 1040 for Billy C. Leonard (received by IRS on or about Mar. 30, 1999)). The government is unable to vouch for its provenance. That document has not been authenticated as a document sent to or received by the Internal Revenue Service in 1992. It is unknown whether that document is the same document to which paragraph 8 of the complaint refers.

**2. The complaint has not identified any document – including a properly filed tax return for 1990 – as an administrative refund claim.**

According to the complaint, plaintiff's 1990 tax return was mailed to the Internal Revenue Service in July 1992. Second Am. Compl. ¶ 8. Plaintiff's failure to identify that return as his administrative refund claim and to include a copy of that document in his pleading might suggest an oversight of the principle that a properly filed original return can be a refund claim that supports jurisdiction over a timely filed refund suit. Instead, plaintiff's response brief proposes that a tax return coupled with some action by the Internal Revenue Service yields an administrative refund claim. *See* Pl.'s Resp. at 2 ("the effect of his timely filed . . . return . . . when coupled with the later action . . . was the creation of an administrative claim"); *id*. at 6 ("the administrative aspect of the claim thus created constructively").

Undoubtedly, a document delivered to the Internal Revenue Service that comports with the formal requirements for an administrative refund claim *is* an administrative refund claim regardless of any action taken by the Internal Revenue Service. If a tax return were properly filed for 1990 by Mr. Leonard, and if that return requested refund of an overpayment of tax, then plaintiff's resort to "constructively" created claims, *see* Pl.'s Resp. at 6, and "expectancy" theory, *see id*., would be wholly unnecessary. As we have previously noted (*see* Def.'s Reply Br. in Support of Def.'s Mot. for More Definite Stmt at 4 n.3 (Feb. 11, 2008); Def.'s Mot. at 4-5), the Treasury Department, by regulation, allows that a "properly executed individual . . . income tax return [*i.e.*, Form 1040] . . . shall constitute a claim for refund or credit . . . for the amount of the overpayment disclosed by such return . . . if it contains a statement setting forth the amount determined

as an overpayment and advising whether such amount shall be refunded to the taxpayer." 26 C.F.R. § 301.6402-3(a)(5).

Mr. Leonard's 1990 tax return, if timely filed, may or may not have been an administrative refund claim, but it is up to plaintiff to reveal in his complaint whether that is the case. Though plaintiff tries to straddle the distinction, he may not, on the one hand, take the position that the return contributed in some manner to the creation of a claim sufficient to supply jurisdiction but, on the other hand, not treat the return as a claim within the meaning of the Court's rules and fail to annex a copy of the return to the complaint. Given Mr. Leonard's wish, announced in his response brief, to rely on the tax return as an "aspect" of his claim, *see* Pl.'s Resp. at 5-6, if Mr. Leonard's tax return were deficient in such a manner that it would not satisfy the requirements of a formal claim, it would be all the more important for plaintiff to abide by the Court's rules and submit a copy of the claim. A copy of the tax return that plaintiff maintains was filed would aid in a determination of whether with that document he could have fairly advised the Internal Revenue Service of the nature of his claim.

Plaintiff's Second Amended Complaint, as it reads, fails to identify or otherwise treat a properly filed tax return for 1990, or any other document, as an administrative claim. Therefore, the jurisdictional prerequisites have not been pleaded.

**3. The averments of the complaint do not inform whether the referenced tax return sufficed as a claim for refund.**

Although the complaint alleges nothing about the content of the 1990 tax return purportedly mailed in July 1992, correspondence attached to the complaint yields a few clues as to what plaintiff might have asserted. For example, in 2002, the Internal Revenue Service seems to have responded to a position apparently then advanced by

plaintiff that a timely filed tax return for 1990 did request a refund. *See* Second Am. Compl., Ex. H (Letter from Daria Gallen, IRS Appeals Officer, to Mr. Leonard (Dec. 18, 2002)) at 1 ("As to your claim that the 1990 return was filed timely and that you are entitled to the *overpayment claimed therein* to be offset or refunded") (emphasis added). Perhaps the amount that plaintiff told the Internal Revenue Service was claimed on the 1990 return as an overpayment was $22,597. *See* Second Am. Compl., Ex. I (Letter from Joseph Ali, IRS Appeals Team Manager, to Mr. Leonard (Feb. 6, 2003)) ("Claim Amount(s): $22,597.00").[2] However, the complaint does not actually make these averments. Neither the Court nor defendant should have to speculate as to how plaintiff *might* have pleaded requisite jurisdictional facts. Plaintiff was obliged to make averments that are "simple, concise, and direct." RCFC 8(e)(1).[3]

In the present suit, Mr. Leonard has *not* alleged that an originally filed return for 1990 sought refund of an overpayment amount, $22,597 or otherwise, nor has plaintiff annexed to the complaint a copy of the document he avers was sent to the Internal Revenue Service in July 1992. Plaintiff has left the content of that purported document a

---

[2] The unauthenticated 1990 Form 1040 supplied to the Internal Revenue Service in 1999 does show an overpayment of $22,598 and request that a credit in that amount be applied toward estimated tax for 1991. *See* Devaney Stmt, Ex. B.

[3] Understandably, plaintiff has not adopted by reference, pursuant to RCFC 10(c), the contents of these letters from the Internal Revenue Service. *See* Second Am. Compl., Ex. H at 3 ("I can only conclude that the return was not filed by October 15, 1994"); *id.* at Ex. I ("You did not file your return within the period of time allowed for a refund of an overpayment of taxes").

subject of speculation.[4] As a result, plaintiff has not shown that the disputed 1990 tax return satisfied the requirements of an administrative refund claim.[5]

**B. Factually, the complaint fails to support jurisdiction because plaintiff has not submitted competent proof that an administrative refund claim was timely filed.**

Though plaintiff may now assert that his 1990 tax return was mailed to the Internal Revenue Service in July 1992, the records of the Internal Revenue Service indicate that no such submission was received. *See* Second Am. Compl., Ex. N (IRS Account Transcript for Billy C. Leonard for Dec. 1990 Tax Period (Aug. 24, 2001)) ("NO RETURN FILED SUBSITUTE FOR RETURN 02-21-1994").[6] The government denies and challenges any allegation that Mr. Leonard's 1990 tax return was filed in July 1992. This factual challenge places the burden on Mr. Leonard to demonstrate facts sufficient to support his contention regarding the Court's jurisdiction. *Cedars-Sinai Medical Center v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993).[7] Thus, if the Court

---

[4] From the unauthenticated 1990 Form 1040 attached to Mr. Devaney's statement, it only can be ascertained what the Internal Revenue Service received in 1999, not what plaintiff may assert he sent in 1992. *See* Devaney Stmt, Ex. B.

[5] Furthermore, without the inclusion of that document with the complaint, plaintiff still has not met the Court's requirement that "[a] copy of the claim for refund shall be annexed to the complaint" – even if the Court were to presume that the complaint adequately alleges that a timely filed return for 1990 sought refund of an overpayment. RCFC 9(h)(6).

[6] A substitute for return prepared by the Internal Revenue Service is not a tax return filed by a taxpayer. *See Healer v. Commissioner*, 115 T.C. 316, 322 (2000); *see also Johnson v. United States*, 54 Fed. Cl. 187, 189 n.5 (2002) ("When a taxpayer fails to file a return and refuses or otherwise fails to disclose relevant information to the IRS respecting a given taxable year, the Internal Revenue Code authorizes the agency to make and execute a substitute return for the taxpayer.") (citations omitted).

[7] Because the burden is on the plaintiff, the government may make its challenge without coming forward with any evidence:

were to conclude that the complaint were facially adequate, that the disputed 1990 tax return would suffice as an administrative claim, and that jurisdiction would not be otherwise barred, then the Court "must scrutinize the evidence submitted by" Mr. Leonard "as support for" his "otherwise naked jurisdictional allegations." *Id*.

**1. Plaintiff has offered no competent proof regarding the transmittal of his 1990 tax return.**

Where jurisdictional allegations are challenged, "the plaintiff must support them by competent proof." *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278 (1936). In this regard, Mr. Leonard has not submitted any *evidence* concerning the transmittal of his 1990 tax return. The correspondence from certified public accountant Robert Boehner and his secretary, which correspondence plaintiff provided as exhibits to the complaint, *see* Second Am. Compl., Exs. D, E, are hearsay, not evidence. *See* Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). The proffered correspondence, not being sworn affidavits (or unsworn declarations, in lieu of affidavits, made under penalty of perjury pursuant to 28 U.S.C. § 1746), likewise do not come within the rules allowing the Court to consider "affidavits" in order to render a decision on a motion. *See* RCFC 7(b)(1), 43(e).

---

> Cedars nevertheless argues that the government failed to present any evidence controverting its jurisdictional allegations contained within its pleadings. Cedars thereby displays its misunderstanding of its burden. The government's factual challenge to the court's jurisdiction placed the burden on Cedars to demonstrate facts sufficient to support its contention regarding the court's jurisdiction. Once challenged, allegations alone are insufficient to meet the complainant's burden.

*Cedars-Sinai*, 11 F.3d at 1584. Here, however, plaintiff has supplied the Court a document that tends to show that a return for 1990 was *not* filed when Mr. Leonard avers. *See* Second Am. Compl., Ex. N ("NO RETURN FILED SUBSITUTE FOR RETURN").

### 2. What plaintiff has put forward does not address whether his 1990 tax return was mailed in July 1992.

Setting aside momentarily the evidentiary shortcomings of plaintiff's Exhibits D and E to focus instead on their substance, those attachments to the complaint do not actually provide an account of the tax return being mailed. Mr. Boehner's secretary merely wrote that she was "confident" that the return "would have" been mailed. *See* Second Am. Compl., Ex. D (Letter from Amelia Staub, addressed "To Whom It May Concern" (Nov. 23, 2001)) ("Because we have file copies with Mr. Leonard's signatures, I am confident that we would have put these returns in the mail for him").[8] Mr. Boehner's memo does not discuss depositing the tax return in the mail in July 1992 but rather recounts a telephonic request from Bill Welsh for copies of Mr. Leonard's tax returns. *Id.*, Ex. E (Memo from Robert C. Boehner to Gene Steger (Jul. 8, 2002)) ("I lived on the Belmont Road from 1981 until 1993, so if my memory is correct, that phone call must have taken place by then"). Curiously, Mr. Boehner, in his memo, avoids disclosing whether he fulfilled Mr. Welsh's request. *See id.* ("I . . . thought I should send them immediately. I . . . decided that Mr. Leonard would have wanted me to comply."). Secretary Amelia Staub may have mailed a number of tax returns on behalf of Mr. Boehner's clients, a copy of a tax return may have existed in Mr. Boehner's files in 2001, and Mr. Boehner may have spoken with Mr. Welsh about Mr. Leonard's tax return, but plaintiff does not offer any account, even a hearsay account, that his 1990 tax return was actually *mailed* in July 1992.

[8] It appears doubtful that Mr. Leonard's 1990 tax return was prepared and mailed in the ordinary course of Mr. Boehner's accounting practice, and Exhibits D and E do not ameliorate that doubt. The extended due date for Mr. Leonard's 1990 tax return was October 15, 1991. July 1992 was well past that deadline. It would seem remarkable if Mr. Boehner's preparation of his clients' tax returns customarily followed such a schedule.

**3. In any event, filing, not mailing, is the jurisdictional prerequisite.**

Even if Mr. Leonard's complaint had included a copy of a 1990 tax return claiming a $22,597 overpayment and had included sworn affidavits from accounting firm personnel that the 1990 tax return had been *mailed* in July 1992, it would not be enough to rescue this suit. Plaintiff still would not have demonstrated that an administrative refund claim was filed. Filing, not mailing, is the jurisdictional prerequisite. Congress, through 26 U.S.C. § 7422, commands that "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax . . . until a claim for refund or credit has been duly *filed* with the Secretary." (emphasis added). "'[T]o file' a document with the Internal Revenue Service means to deliver it to the agency so that the agency receives it. . . . Delivery and receipt are the essential components of filing." *Hull v. United States*, 146 F.3d 235, 238-39 (4th Cir. 1998). Here, there is no indication that delivery occurred. On the contrary, Mr. Leonard's account transcript for 1990 reflects that no tax return was filed by Mr. Leonard. *See* Second Am. Compl., Ex. N ("NO RETURN FILED SUBSTITUTE FOR RETURN").[9]

[9] Congress does allow that "the date of the United States postmark . . . shall be deemed to be the date of delivery" where "the postmark date falls . . . on or before the prescribed date for the filing (including any extension granted for such filing) of the return . . . and the return . . . was, within the time prescribed . . . , deposited in the mail . . . postage prepaid, properly addressed" and the "return . . . is, after . . . such [prescribed] date, delivered by United States mail to the agency." 26 U.S.C. § 7502(a). This provision addresses *when*, not *whether*, a filing is treated as delivered. Absent establishment of delivery, this provision is not implicated and the date of a postmark is irrelevant. *See* 26 U.S.C. §7502(a)(1) ("If any return . . . is . . . delivered"). Additionally, there is no indication that the mailing would have born proper postage or would have been properly addressed.

Congress has afforded taxpayers a mechanism by which they can send returns by mail and avoid a delivery dispute. That mechanism is registered or certified mail, as provided in Section 7502(c):

> **(c) Registered and certified mailing.--**
>
> **(1) Registered mail.**--For purposes of this section, if any such return, claim, statement, or other document, or payment, is sent by United States registered mail--
>
> **(A)** such registration shall be prima facie evidence that the return, claim, statement, or other document was delivered to the agency, officer, or office to which addressed, and
>
> **(B)** the date of registration shall be deemed the postmark date.
>
> **(2) Certified mail.**--The Secretary is authorized to provide by regulations the extent to which the provisions of paragraph (1) of this subsection with respect to prima facie evidence of delivery and the postmark date shall apply to certified mail.

26 U.S.C. § 7502(c) (1992); *see also* 26 C.F.R. § 301.7502-1(d)(1) (1992) ("[I]f the document is sent by registered or certified mail, proof that the document was properly registered or that a postmarked certified mail sender's receipt was properly issued therefor, and that the envelope or wrapper was properly addressed to such agency, officer, or office shall constitute prima facie evidence that the document was delivered to such agency, officer, or office").[10] The correspondence from Mr. Boehner's secretary

[10] *See H.S.&H. Ltd. of Columbia ILL v. United States*, 18 Cl. Ct. 241, 246 (1989) ("The exceptions by which a taxpayer may prove timely filing when mailed are exclusively and completely outlined in § 7502"); *Buttke v. United States*, 13 Cl. Ct. 191, 192-93 (1987) (rejecting taxpayers' argument "that they may prove their timely mailing . . . by the tax preparer's affidavit of mailing" and observing that "it is clear that Congress, by enacting Section 7502, intended to avoid the problem of circumstantial proof of mailing, the precise problem here involved"); *see also Ygnatowiz v. United*

unambiguously states that the purported mailing of Mr. Leonard's 1990 tax return in July 1992 did not occur via certified mail. Second Am. Compl., Ex. D (Letter from Ms. Staub, addressed "To Whom It May Concern" (Nov. 23, 2001)) ("Unfortunately, these returns were not mailed certified."). Consequently, Mr. Leonard retains the burden of showing delivery. Mr. Leonard is unable to satisfy that burden and, therefore, cannot show that his 1990 tax return was filed in July 1992.

In sum, the jurisdictional prerequisite for a tax refund suit that a timely, sufficient claim for refund have been filed with the Internal Revenue Service has not been met. The complaint's own language indicates that no claim was filed. The complaint fails to otherwise identify a refund claim, fails to provide sufficient details regarding the 1990 tax return to allow for a conclusion that it sufficed as a refund claim, and fails to supply a copy of that tax return. Plaintiff fails to provide any competent proof that he filed his 1990 tax return in July 1992, or even that it was mailed.

Accordingly, plaintiff's suit must be dismissed for lack of subject matter jurisdiction.

---

*States*, No. 96-345T, 1997 WL 625502, *4 n.8 (Fed. Cl. Aug. 5, 1997) (not reported) ("This Court agrees with the decisions in *H.S. & H. Ltd* and *Buttke*, and therefore adopts the view that § 7502 establishes the *only* exceptions to the physical delivery rule"). The Federal Circuit, in a non-precedential opinion, has acknowledged a split of authority in the courts of appeal concerning whether a mailing that does not fall within 26 U.S.C. § 7502 may nonetheless constitute a timely filing without a showing that timely physical delivery to the Internal Revenue Service occurred, but the Federal Circuit has not decided the issue. *See Davis v. United States*, 230 F.3d 1383, 2000 WL 194111, *2-3 (Fed. Cir. 2000) (table). *But cf. Rios v. Nicholson*, 490 F.3d 928, 930-32, 934 (Fed. Cir. 2007) (concluding that 38 U.S.C. § 7266(c), the statute establishing *when* a notice of appeal (NOA) by the Veterans Court is deemed to have been received, did not implicitly displace the common law mailbox rule so as to exclusively control the question of *whether* the notice of appeal was received, because Section 7266(c) "does not contemplate a scenario where the Veterans Court alleges that it never received a petitioner's NOA, and therefore cannot be abrogated or rendered useless by application of the common law mailbox rule").

## II. This Court has no jurisdiction over a suit filed after the expiration of the statute of limitations.

Plaintiff filed this suit on September 26, 2007, and attached to the complaint a letter of February 6, 2003, to Mr. Leonard from the Internal Revenue Service that provided Mr. Leonard "legal notice that [his] claim [wa]s fully disallowed." Second Am. Compl., Ex. I (Letter from Mr. Ali to Mr. Leonard (Feb. 6, 2003)). Despite that these two dates are separated by well over two years, *see* 26 U.S.C. § 6532(a), plaintiff contends "that the Complaint was timely filed." Pl.'s Resp. at 1.

Plaintiff's argument that a subsequent letter from the Internal Revenue Service somehow "tolled the statute of limitations," Pl.'s Resp. at 6, would presume reading the word "not" out of the text of the relevant statute:

> (4) RECONSIDERATION AFTER MAILING OF NOTICE.--Any consideration, reconsideration, or action by the Secretary with respect to such claim following the mailing of a notice by certified mail or registered mail of disallowance shall *not* operate to extend the period within which suit may be begun.

26 U.S.C. § 6532(a)(4) (emphasis added). Congress prescribed a particular process for the Internal Revenue Service and a taxpayer to extend the time within which suit may be brought, *see* 26 U.S.C. § 6532(a)(2) ("exten[sion] for such period as may be agreed upon in writing between the taxpayer and the Secretary"), and explicitly decreed that *any* other subsequent action by the Secretary "shall not operate to extend the period within which the suit may be begun." 26 U.S.C. § 6532(a)(4). Thus, other than entering into a written agreement to extend the period for bringing suit, any action – including mailing a letter dated February 29, 2003, referencing a forthcoming statutory notice of claim

disallowance for 1990 – had no effect on the already commenced running of the two-year period.

It may be that an Internal Revenue Service appeals officer made a mistake in dating a letter February 29, 2003. Compl., Ex. J (Letter from Ms. Gallen to Mr. Leonard (Feb. 29 [*sic*], 2003)). Likewise, that second letter appears to have been inaccurate in stating that a statutory notice of claim disallowance for 1990 would be issued within two weeks when, in fact, the Internal Revenue Service appeals team manager had already sent the formal notice. *See id*. Evidentally, fourteen separate tax years were in issue ("Tax Period(s) Ended: 1983, 1986, 1987-1991 and 1993-1999"), and Ms. Gallen's letter purports to set out a roadmap as to resolution of all fourteen various years. *See id*. In any event, Ms. Gallen's letter is not a written agreement between the Internal Revenue Service and Mr. Leonard to extend the period for bringing suit.

Federal Circuit precedent is clear: No equitable exception exists in Section 6532. *RHI Holdings, Inc., v. United States*, 142 F.3d 1459, 1463 (Fed. Cir. 1998); *see also Marcinkowsky v. United States*, 206 F.3d 1419, 1422 (Fed. Cir. 2000). Any inaccuracies in Ms. Gallen's letter are irrelevant to the application of 26 U.S.C. § 6532(a). As the Federal Circuit bluntly remarked, "[t]ax law . . . is not . . . characterized by case-specific exceptions reflecting individualized equities." *Marcinkowsky*, 206 F.3d at 1422 (citation omitted).

The period of limitations for bringing suit commenced with the mailing of Mr. Ali's letter of February 6, 2003, was not equitably tolled by any subsequent action of the Internal Revenue Service, was not extended by written agreement between Mr. Leonard

and the Internal Revenue Service, and expired almost 32 months before this suit was filed. This suit, therefore, is untimely and should be dismissed.

## CONCLUSION

Plaintiff has not pleaded, nor has he demonstrated, the timely filing of an administrative claim. Likewise, plaintiff has not shown this suit to have been timely filed.

For the reasons stated, pursuant to RCFC 12(b)(1), the complaint should be dismissed without prejudice for lack of subject matter jurisdiction.

Respectfully submitted,

s/ Richard H. Bowles
Attorney of Record
U.S. Department of Justice, Tax Division
Court of Federal Claims Section
P.O. Box 26, Ben Franklin Station
Washington, D.C. 20044
(v) 202-307-6500
(f) 202-514-9440

NATHAN J. HOCHMAN
Assistant Attorney General, Tax Division
DAVID GUSTAFSON
Chief, Court of Federal Claims Section

s/ David Gustafson
Of Counsel

June 3, 2008